## Case No. 2,688.

CHITTENDEN et al. v. DARDEN et al.

[2 Woods, 437.][1] ,

Circuit Court, N. D. Georgia. Sept. Term, 1875.

JURISDICTION—FOREIGN ATTACHMENT — VOLUNTARY APPEARANCE — POWERS OF UNITED STATES COMMISSIONERS.

1. Section 6 of the "Act to further the administration of justice" [June 1, 1872]—17 Stat. 197; Rev. St. § 915—does not confer upon the United States courts jurisdiction to institute suits by the process of foreign attachment.

[Cited in Anderson v. Shaffer, 10 Fed. 267; Harland v. United Lines Tel. Co., 40 Fed. 312; Perkins v. Hendryx, Id. 657; Treadwell v. Seymour, 41 Fed. 581. Distinguished in Crocker Nat. Bank v. Pagenstecher, 44 Fed. 706.]

2. The voluntary appearance of the defendant in a suit so commenced would cure the defect of jurisdiction, but service of summons made upon him in invitum while in the district would not.

3. The giving of a bond by a nonresident defendant for the release of property seized by process of foreign attachment, issued from a United States court, is not a voluntary appearance, and does not give the court jurisdiction.

4. Commissioners of the circuit courts of the United States have not, by statute, any power to issue writs of attachment returnable to said courts.

The plaintiffs [Chittenden & Co.] were citizens of New York, and the defendants [Darden & Holston] citizens of Alabama. The action was commenced by a writ of attachment issued by a commissioner of the United States circuit court, on Nov. 23, 1874, which was levied on a stock of goods and other property of the defendants in West Point, Georgia, which is within this district. After the attachment was levied, the defendants, who, upon February 17, 1875, happened to be found by the marshal in West Point, within the district. acknowledged service of a notice provided for by section 3309 of the Code of Georgia. This section declares that "the plaintiff, his agent or attorney at law, may give notice in writing to the defendant of the pendency of such attachment and of the proceedings thereon, which shall be served personally on the defendant by the sheriff * * * at least ten days before final judgment on said attachment; * * which being done, the judgment rendered upon such attachment shall have the same force and effect as judgments rendered at common law." After the service of the notice provided for by the section just quoted, the defendants, under section 3319 of the Code of Georgia, gave bond with security, payable to the plaintiffs in attachment, binding themselves to pay them the amount of the judgment and costs they might recover in the case; whereupon, the property attached was de-

---

[1] [Reported by Hon. William B. Woods. Circuit Judge, and here reprinted by permission.]

livered to them. The defendants moved to quash the attachment and to dismiss the cause, because the court was without jurisdiction in the premises.

E. N. Broyles, for the motion.
Geo. Hillyer, opposed.

WOODS, Circuit Judge. The theory of defendants is, that as neither plaintiffs nor defendants were citizens of the state of Georgia, and the defendants were not found within the district by service of process in personam at the commencement of the suit, the proceeding by attachment will not hold; in other words, that the United States courts have no jurisdiction to institute suits by the process of foreign attachment. Unquestionably this was true under that provision of the judiciary act (1 Stat. 79, § 11) which declares, "that no civil suit shall be brought in either of said courts, district or circuit, against an inhabitant of the United States by any original process in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ."

In the case of Toland v. Sprague, 12 Pet. [37 U. S.] 300, the supreme court, having this subject under consideration, held, (1) That by the general provisions of the laws of the United States, the circuit courts can issue no process beyond the limits of their districts. (2) That independently of positive legislation, the process can only be served upon persons within the same districts. (3) That the acts of congress adopting the state process adopt the form and modes of service only so far as the persons are rightfully within the reach of such process, and did not intend to enlarge the sphere of the jurisdiction of the circuit courts. (4) That the right to attach property to compel the appearance of persons can properly be used only in cases in which such persons are amenable to the process of the court, and even in case of a person being amenable to process in personam, an attachment against his property cannot be issued against him, except as part of or together with process to be served on his person. The same doctrine had been previously held by the United States circuit court for the district of Massachusetts, in the case of Picquet v. Swan [Case No. 11,134].

The decision of the supreme court above cited settles the question in hand against the plaintiffs, unless it has been affected by subsequent legislation. It is claimed that this has been done by the 6th section of the act "To further the administration of justice," passed June 1, 1872 (17 Stat. 197; Rev. St. § 915), which declares that "in common law causes in the circuit and district courts, the plaintiff shall be entitled to similar remedies by attachment or other process against the property of the defendant, which are now provided for by the laws of the state in which the court is held, applicable to the courts of such state." It is claimed that this enactment repeals, by implication, the provision in the 11th section of the judiciary act above quoted. I do not think it was the purpose of the act of 1872 to enlarge the jurisdiction of the United States courts, by allowing them to issue writs of foreign attachment, and thus acquire jurisdiction over inhabitants of the United States in districts other than those wherein they resided or were found at the time of serving the writ.

The policy to require the suit against an inhabitant of the United States to be brought in the district where he resided or was found had been continued without interruption since the passing of the judiciary act of 1789, and it is reasonable to suppose that if congress contemplated a change in that policy, it would have made it clear and not left it to implication. That it was not the purpose of congress to change this policy is made evident by the enactment of sections 738 and 739 of the Revised Statutes of the United States (Rev. St. pp. 139, 140). Section 738 provides that when any defendant to a suit in equity to enforce any legal or equitable lien or claim against him is not an inhabitant of or found within the district, and does not voluntarily appear thereto, he may be brought in by publication. Section 739 reënacts the 11th section of the act of 1789, supra, by declaring that except in the cases provided by the preceding section (738) and in the two succeeding sections (740, 741), no civil suit shall be brought in either of said courts against an inhabitant of the United States by any original process in any other district than that whereof he is an inhabitant, or in which he is found at the time of serving the writ. The two succeeding sections referred to only provide for service of original process in certain cases where there are two districts in the same state. As the case of a foreign attachment does not come within either of the exceptions mentioned in section 739, it must fall under the prohibition of the body of the section. It is true that the 6th section of the act of 1872 is reënacted by Rev. St. § 915. But this section, and the section just quoted, must be construed together, and to give section 739 effect, section 915 must be held to apply only to cases of attachment when process in personam has been properly served on the defendant. I am of opinion, therefore, that there was no authority to issue the writ of attachment in this case. But it is said that notice of the attachment, and of the proceedings thereunder, which, by the law of Georgia, is equivalent to a summons, has been served on the defendant within the district, and that therefore the attachment will hold. I have no doubt that the voluntary appearance of the defendant to the suit would cure the want of personal service. Indeed, it has been expressly held in Toland v. Sprague, supra, that where a defendant, who was not within the district when process of foreign

attachment issued, afterward appeared and pleaded to the merits, the judgment is valid. But is this true when there is no voluntary appearance, but the defendant is caught within the district and served against his will? Can a plaintiff issue a writ of foreign attachment and seize the property of a person not an inhabitant of a district where the suit is brought, and not personally served within the district, and when the latter comes into the district to recover possession of his property by giving bond, or for any other purpose, serve him with summons, and thus bring him into court against his will? It seems to me, that to allow this, would be to sanction an abuse of the process of the court. The right of a citizen to be sued by original process in the district only where he resides, or in which he shall be found, is a substantial right, of which he ought not to be deprived by any artifice. In my judgment, no writ of attachment can be served on the property of a nonresident until he has been found within the district and served with process in personam. The attachment must follow personal service, or at least be contemporaneous with it. I am therefore of opinion that the service upon the defendants, by the marshal, of the notice of the proceedings in attachment, was ineffectual to bring them into court or cure the defect of jurisdiction. If what has just been said is true, it follows that the fact that defendants gave bond in pursuance of the Georgia Code for the release of the attached property does not amount to the voluntary appearance of the defendants, nor give the court jurisdiction over their persons. I am therefore of opinion that the motion to quash the attachment must prevail.

The question has been raised in the case, whether a commissioner of the circuit court has power to issue the writ of attachment. The power is claimed for this officer on the ground that by the Code of Georgia an attachment may be issued by justices of the peace, returnable to their own, and in certain cases, to the superior courts of the county. Code, § 457. It is insisted, that as section 915 of the Revised Statutes provides that in common law cases, the plaintiff shall be entitled to similar remedies by attachment or other process against the property of the defendant, which are provided by the laws of the state where this court is held, and as under the law of Georgia, a justice of the peace may issue an attachment against the property of defendants, it follows by analogy that the same power is possessed by commissioners of the circuit courts. I think this is stretching too far the interpretation of section 915, Rev. St.

Commissioners can only exercise powers expressly conferred. Section 627 of the Revised Statutes provides for the appointment of commissioners, and declares that they shall exercise the powers which are or may be expressly conferred by law upon commissioners of circuit courts. Many powers are expressly conferred on the commissioners of the circuit courts. See Rev. St. §§ 945, 727, 1014, 1778, 2025, 2026, 5076. But the power to issue process for the circuit courts is nowhere conferred upon the commissioners, and they can be considered to have such power only by the faintest implication. I think section 716 of the Revised Statutes, excludes the idea that any such power resides in a circuit court commissioner. That section declares that: "The supreme court and the circuit and district courts shall have power to issue writs of scire facias, and to issue all writs not specifically provided for by the statute, which may be necessary for the exercise of their respective jurisdictions and agreeably to the usages and principles of law." Here the power to issue process, is conferred on the courts alone, and the idea that a commissioner possesses this power is plainly excluded. Whether the circuit court could confer the power to issue attachments upon its commissioners is a question we are not now required to decide. It is sufficient for this case to say that no such power has been conferred on its commissioners by this court. On all grounds, therefore, I am of opinion that the writ of attachment was improvidently issued, and that it must be quashed and the case dismissed.