HORSFORD *et al. v.* GUDGER *et al.*

(*Circuit Court, W. D. North Carolina.* May Term, 1888.

1. EQUITY—LACHES.

An ancestor of part of the defendants conveyed certain lands in Tennessee to plaintiffs' ancestors in 1796, the deed being proved and recorded in New York, where the parties resided. Shortly thereafter the vendees delivered to the vendor a duplicate of the deed. the latter agreeing in writing indorsed on the original deed to have such duplicate recorded in the proper office in Tennessee, and deliver the same to a designated party there, or to the vendee's order, all of which he failed to do. *Held* that, no proceedings having been brought to perfect the title in such vendees during the vendor's life-time, although he lived for nearly 40 years after the transaction, a bill filed nearly 100 years thereafter, when all the parties had been dead for many years, charging such vendor, upon information and belief, with fraud in failing to have such duplicate deed recorded, would not be sustained on demurrer as against one in possession of the land for nearly 25 years under tax title, with color of title.

2. SAME—PLEADING—DEMURRER.

When a bill shows upon its face that plaintiff, by reason of lapse of time and his own laches, is not entitled to relief, the objection may be taken by demurrer.

In Equity. On demurrer to bill.

*Andrew Fiske* and *Theo. F. Davidson,* for complainants.
*Gudger & Carter* and *M. E. Carter,* for defendant Gudger.
*Chas. A. Moore* and *P. A. Cummings,* for other defendants.

DICK, J. The first cause assigned in the demurrer is, the bill shows upon its face "that the plaintiffs, and those under whom they claim, have been guilty of gross laches, in delaying for so long time to prosecute their claim, and that lapse of time since the cause of action stated in the bill arose has been so great, this court, under the law rules and practice of the same, will refuse its aid." The principle in equity is well settled by many authorities that "when the bill shows upon its face that the plaintiff, by reason of lapse of time, and of his own laches, is not entitled to relief, the objection may be taken by demurrer." *Speidel* v. *Henrici,* 120 U. S. 377, 7 Sup. Ct. Rep. 610. The requisites of a bill to prevent such a defense from being fatal to the claim of the plaintiffs are clearly stated in *Badger* v. *Badger,* 2 Wall. 87, and I will proceed to consider the principles therein announced, and apply them to the facts in this case as admitted by the demurrer. A demurrer only admits facts that are well pleaded. Mere averments of a legal conclusion are not admitted by a demurrer unless the facts and circumstances set forth are sufficient to sustain the allegation. *Gould* v. *Railroad Co.,* 91 U. S. 526. A bill for relief on the ground of fraud must be specific in its statement of the facts that constitute the fraud alleged. A charge, in general terms, that a transaction was fraudulent is not sufficiently definite; the particulars must be set forth in detail. Fraud is a conclusion of law. The things done or omitted constituting the fraud must be so stated upon the face of the bill that the court may see that they are fraudulent, if proved or

admitted. The law never presumes fraud, but rather imputes honesty and fair dealing in the conduct of men. Mere words alleging and averring fraud, no matter how often or how strongly set forth in the pleadings, cannot make a case for the interference of a court of equity. They must be connected with some specific acts for which the person charged is legally or equitably responsible to the plaintiff. *Van Weel* v. *Winston*, 115 U. S. 228, 6 Sup. Ct. Rep. 22.

I will now briefly state the facts that are properly set forth in the bill, and which are admitted by the demurrer; and then I will consider the question as to the sufficiency of the allegations and averments of fraud made upon the face of the bill; and also the reasons and excuses for such long delay in prosecuting the claim. John Love, the ancestor of all the defendants except Jackson J. Gudger, was seized and possessed in fee of the lands which are the subject-matter of this controversy; and on the 28th day of May, 1796, in the city of New York, did, upon sufficient consideration, sell and convey said lands in fee-simple to David Gelston and Ezra L'Hommedieu, the ancestors of the plaintiffs; and Exhibit A is a correct copy of the deed of conveyance then and there executed. The original deed remained in the possession of the said vendees, and was proved and recorded in the secretary's office of the state of New York. On the 18th day of June, 1796, a duplicate was placed in the hands of the vendor, John Love, who, in an indorsement on the original in the hands of the vendees, engaged and promised to have said duplicate "duly recorded in the proper office in the state of Tennessee, and to deliver the same, when recorded, either to William Blount, Esquire, or William Cock, Esquire, both of the said state of Tennessee, or to the order of the said David Gelston and Ezra L'Hommedieu, or either of them." The plaintiffs allege that a very thorough examination of the office in which said deed ought to have been recorded was recently made, and neither the original deed nor record of the same could be found. They further allege that they have not been able, after diligent search, to find the duplicate that was in the hands of the vendees, Gelston and L'Hommedieu.

The said deed conveyed a legal title to the vendees, which was not divested by the failure of registration, and was in no way impaired, as between parties and privies. The legal title was not in all respects perfect, as the deed could not be offered in evidence until registered. The vendees were in possession of the original deed, attested by subscribing witnesses, and could at any time have had the same registered. If they had exercised reasonable diligence, they could have easily ascertained whether the vendor, John Love, had complied with his promise to have the duplicate registered in the proper office in the state of Tennessee. It appears from the indorsement of John Love on the original deed that the vendees had two agents or friends in the state of Tennessee to whom they were willing that the deed, when recorded, should be delivered. The law presumes that every person, in dealing with his own property, is acquainted with his rights, and will take care of them, if he has a reasonable opportunity of knowing them. He cannot properly allege that a fraud

has been perpetrated upon him by any transaction in relation to his property when he had the means of discovery in his power, and with ordinary care and attention could have seasonably detected the wrong, and prevented or averted any injurious consequences. The vendees paid a large sum of money for the lands; they had the original deed in their possession; they had agents or friends in the locality where the lands were situated; they had the strong motive of self-interest to prompt them to diligence in perfecting their title by registration; and they had ample opportunity to ascertain whether John Love had complied with his promises in the indorsement on the original deed. I am unable to make any reasonable conjecture, from the facts alleged in the bill, as to the causes for such apparently gross laches on the part of the ancestors of the plaintiffs. They certainly must have regarded the lands as valuable, or they would not have paid for them such a large sum of money. They must have investigated the title of the vendor, and inquired into the requirements of local laws as to the perfecting of such title. They seem to have lost the original deed, which they held as purchasers; they preserved no letters of correspondence with Love, or any one else in the state of Tennessee; and they sought no remedy in the courts to have their title perfected, although John Love lived for nearly 40 years after the alleged fraudulent transaction. If there were any facts stated in the bill tending to show that after the execution of said deed John Love was in possession of said, lands exercising acts of dominion, I could reasonably conceive that the parties to this transaction subsequently rescinded their contract, and by mutual agreement destroyed the unregistered deeds, and thus revested the title in John Love; and that the recent accidental discovery of the recorded copy in the secretary's office of the state of New York has given rise to this controversy. Very indefinite allegations and averments are made by the plaintiffs, founded upon information and belief, as to matters about which they could have no personal knowledge, and could acquire no accurate information, as the transactions occurred nearly a century ago. There are no written memorials to be found after diligent search, except the copy of the original deed on the record of the secretary's office of New York; and all persons who could have had any actual knowledge of the transaction have been dead for 50 years. There are no statements of facts tending to show that the heirs of John Love ever claimed any interest in these lands; but we can readily suppose, from our knowledge of human nature, that if they claimed any interest they would not have allowed the lands in this state to have been sold for such a small amount of taxes, or they would have seasonably redeemed the same in the manner provided by law. These lands seem to have remained neglected by the owners, and open to squatters and trespassers, until they were duly sold for taxes, and were purchased at public sale by the defendant Jackson J. Gudger.

After carefully examining and considering all the facts and circumstances set forth in the bill as to the conduct of John Love in relation to the lands which are the subject-matter of this controversy, I think that it would be the grossest injustice in a court of equity to draw the

conclusion of law that he had acted fraudulently, from the loose and indefinite allegations of fraud in the bill made upon information and belief by persons of a third generation subsequent to the transaction, who have never resided near the lands, and who must have derived their information from parties who could have had no personal knowledge of the matters. The facts and reasons assigned in the bill as causes of delay in asserting rights, and in seeking proper legal and equitable relief, are entirely insufficient to account for the gross laches of the plaintiffs and their ancestors for nearly a century. So far from being sufficient for that purpose, they are not, to my mind, even plausible, as they are not consistent with the principles and motives that usually influence human conduct. In the course of my long professional and judicial experience I have never met with a case more suitable than this one for the application of the wise and salutary principles involved in the equitable doctrine of non-interference where there has been gross negligence in prosecuting rights, and claims have become stale by long lapse of time. Certainly transactions that have been in repose for 90 years should not now be disturbed. The parties and actors have been in their graves for more than 50 years. There seems to have been no charges of fraud alleged against Love in his life-time, when he could have made explanation and defense. It would not be common justice now to infer fraud from indefinite allegations in pleadings, founded upon loose traditions and mere hearsay statements, 50 years after his death.

The facts set forth in the bill as to the transactions of the defendant Jackson J. Gudger in relation to the lands in controversy are not sufficient to give rise to inferences of fraud to be relieved by a court of equity. We know from the public laws of this state that said lands were subject to taxation. The taxes appear not to have been paid by the owners, and the lands were proceeded against in due course of law to collect such taxes, and the defendant Gudger became the purchaser at public sale. We must presume that the sheriff, the duly-authorized officer of the law, acted rightfully, and in conformity with the mandates and provisions of law. The knowledge which the defendant may have had as to the title of the plaintiffs cannot give rise to any ground for a court of equity to impose upon him the liabilities of a constructive trustee. Every purchaser at a tax sale knows that he is purchasing the lands of some other person. The law makes very stringent provisions to secure owners of land from any wrong and injustice under tax sales, and all these provisions must be complied with by the sheriff and the purchaser before the title will pass; and even then a reasonable time of redemption is allowed. The defendant Gudger has had possession of said lands as owner for more than 25 years under color of title. His rights, whatever they may be, are secured, by the state statute of limitations, from any claim of the plaintiffs that can be asserted in an action at law or suit in equity.

The second cause assigned in the demurrer objects to the jurisdiction of the court, as it appears upon the face of the bill that two of the defendants are citizens of the United States residing in the territory of New Mexico, and two are citizens of the District of Columbia. It is well

settled that the constitution and laws of the United States only give jurisdiction to the circuit courts to hear and determine the rights of the citizens of different states, and of aliens. Citizens of the territories and of the District of Columbia are incapable of instituting suits in such courts, and said courts cannot compel them, by any process, to appear and answer any legal or equitable procedure, and cannot allow them to make a voluntary appearance as defendants. The mere fact that such citizens are named as defendants in this bill, and process is prayed against them, does not make them defendants, as it appears upon the face of the bill that this court can in no way acquire jurisdiction over them. The constructive service by notice and publication, as provided for by sections 8, 9, c. 137, Supp. Rev. St., applies only to such defendants as are citizens of different states. The voluntary appearance of these defendants by counsel does not make them parties, as they cannot thus submit their rights to the jurisdiction of this court, and thereby cure an absolute want of judicial power. As this court has not and cannot acquire jurisdiction over them, it can proceed, as if there were no such persons in existence, to determine the rights of the parties properly before the court, unless.it appears that these citizens of the United States who are not citizens of any of the states have such an inseperable interest in the subject-matter of this suit that the court 'cannot so form its decree as to save their rights from serious injury.

The plaintiffs in this case seek to establish and secure their rights in certain lands situated in this district, which they claim were duly conveyed to their ancestors by the ancestor of the defendants. They allege that the deed of conveyance was lost, or fraudulently destroyed, before registration by the ancestor of the defendants; and they call for the execution of another deed by the defendants, to be made effectual by registration, so that they may, in a court of law, successfully assert and enforce their legal rights to said lands against the claims and trespasses of various persons in possession, receiving rents and profits, and doing serious damage. As a general rule, in suits in equity, whenever the inheritance in real estate may be materially affected by a decree, it is necessary that all persons entitled to such inheritance should be before the court as parties. But such general rule has exceptions. *Etheridge v. Vernoy,* 71 N. C. 184. Courts of equity recognize and observe the well-settled principle of legal and natural justice that a man's rights of person or property should not be seriously prejudiced by any decree without having them before the court, and affording him full opportunity of explanation and defense. Many adjudged cases, however, show that the general rules relating to necessary parties have been modified by exceptions founded upon considerations of convenience, necessity,. and manifest justice. *Payne v. Hook,* 7 Wall. 425; Story, Eq. Pl. § 96, and notes; *Hotel Co. v. Wade,* 97 U. S. 13. Suits like this are of a local nature, and must be brought in the district where the lands are situated. This court, therefore, in this case, has jurisdiction of the subject-matter, and no other court out of this state can have concurrent jurisdiction. This court can, by the service of its process, and by the constructive service of publica-

tion, bring before it citizens of any of the states, except those where the plaintiffs reside, and settle their rights by decree. It certainly would be a great hardship upon non-resident plaintiffs, in cases like this, where they seek to enforce local rights that are admitted or clearly proved, if they could not have such rights established and secured in a United States circuit court held in the state where such lands are situated, because some defendants happened to be citizens of a territory or of the District of Columbia. It is unnecessary for me to determine this question, as I have already decided that the plaintiffs are not entitled to relief on account of their gross laches, and the staleness of their claim. I am, however, inclined to the opinion that if they had not thus lost their right to equitable relief they could proceed against the parties properly before the court, as the absent heirs of John Love are not indispensable parties. The principle is well settled that a deed good and effectual in law except for want of registration, and which has been lost before registration, can be set up in a court of equity, and a decree made for another conveyance by the bargainor or his heirs, which will have relation back to the time of the execution of the lost deed. *Austin* v. *King*, 91 N. C. 286.

The plaintiffs in their bill set forth such a state of facts that would, except for their laches, entitle them to the equitable relief prayed for; and such facts are admitted by the demurrer. Upon the execution of the deed on the 28th day of May, 1796, by John Love, the title to the lands was conveyed to the vendees, to be perfected by subsequent registration. The sole object of registration, at that time, was to give notice to third parties, and did not affect the interests of the parties to the instrument. The plaintiffs, therefore, by inheritance, have the legal and equitable title to the lands as the heirs at law of the vendees; and the defendants derived no substantial interest in the same as the heirs at law of the vendor, but they are liable to the equitable obligation of executing another deed to supply the place of the lost deed that was executed by their ancestor. If the plaintiffs had not slept upon their rights, and lost them by lapse of time, they would be entitled to proceed against the defendants before the court, and have a decree affording the equitable relief prayed for. The absent heirs have no legal or equitable rights in the lands. They could not be compelled to join in the re-execution of any deed. If they have any contingent interests, their rights could be reserved and protected in the decree. *Harding* v. *Handy*, 11 Wheat. 103; *Etheridge* v. *Vernoy, supra.* Let a decree be drawn dismissing the bill, with costs to defendants.