## BELEN ORTIZ ET AL.

*v.*

## EVARISTO ALCALÁ DEL OLMO ET AL.

---

San Juan, Law, No. 367.

1. An action not included within the terms of § 8 of the judiciary act of 1875 (U. S. Rev. Stat. § 738) cannot be maintained in the United States district court for Porto Rico against a nonresident of the district, on substitute service by attachment of property within the district.

Ortiz v. Alcalá del Olmo.

2. Section 915 of the Revised Statutes of the United States (U. S. Comp.
   Stat. 1901, p. 684) did not enlarge the powers conferred upon Federal
   courts by § 739 of the same.

Opinion filed August 27, 1906.

*Willis Sweet, Esq.,* attorney for plaintiffs.

*F. H. Dexter, Esq.,* and *Juan Vias Ochoteca, Esq.,* attorneys
for defendants.

RODEY, Judge, delivered the following opinion:

The plaintiffs in this case allege that they are citizens of, and
residents in, Porto Rico, and that the defendants are subjects
of the King of Spain and reside in that country. The suit is an
action for damages in the sum of about $72,000, alleged to have
occurred during certain foreclosure and receivership proceed-
ings, while defendants were residents of Porto Rico, some years
ago. The proceeding was commenced by the issuance of a sum-
mons in the ordinary form, and the contemporaneous issuance of
a writ of attachment. The marshal's return shows that he was
unable to find the defendants in the district, but that he attached
their property under the writ, as per the directions of the plain-
tiffs, filed for that purpose.

Thereupon, the plaintiffs prayed for, and were allowed, sub-
stituted process by publication. Hence it is what is known in
law as a foreign attachment proceeding. Defendants, by counsel,
demur, plead to the jurisdiction, and move to dissolve the attach-
ment.

The question is indeed a very important one. To decide it,
the court must pass upon the question as to whether this court

Ortiz v. Alcalá del Olmo.

has power to render any judgment against these nonresident defendants on such service, by which their property, attached at the time of the filing of the suit and the issuance of the writ, can be sold or subjected to the satisfaction of plaintiffs' claim. In other words, is there any jurisdiction in a district or circuit court of the United States of a proceeding *in rem* where the defendant is not served with the process personally within the district?

It may be well to state that, in this district, the lack of such jurisdiction in this court will result in considerable inconvenience, because many Spaniards, often with plenty of property here, left for Spain just before, at, or shortly after the commencement of the Spanish-American War, and have ever since continued to reside there, in many instances, it is said, leaving *ex delicto,* and, sometimes, *ex contractu,* obligations behind them. Under the peculiar mixture of civil law and code procedure of the local insular courts, counsel contend that their clients have no adequate remedy there.

This court, of course, has a unique status. Without being a court of the United States in the sense of art. 3, § 1, of the Constitution (Clinton v. Englebrecht, 13 Wall. 434, 20 L. ed. 659), it is called, "the district court of the United States for Porto Rico," and has, in addition to the ordinary jurisdiction of a district court of the United States, jurisdiction also of a circuit court of the United States (§ 34, act of Congress, April 12, 1900, 31 Stat. at L. 77, chap. 191), and, in addition, is given jurisdiction of all civil cases "where the parties or either of them . . . are subjects of a foreign state or states." 31 Stat. at L. 953, chap. 812.

Assuming, then, that the court has not only as complete, but even ampler, jurisdiction than a district or circuit court of the United States, can it entertain this sort of a case?

Ortiz v. Alcalá del Olmo.

Practically every state and territory has granted the power here contended for, by their own laws, to their courts of highest original jurisdiction, but it is contended that no such power has ever been vested in courts of the United States, by Congress.

Counsel for the respective parties have made arguments and filed briefs before the court, that show commendable zeal in reasoning out the law, and tracing the different cases in which the subject has been discussed. :

Whether the court has the jurisdiction contended for or not, depends upon the construction to be given to the 11th section of the judiciary act of 1789, and to all amendments of the same, and other legislation on the subject, especially the process act of 1872, § 915, U. S. Rev. Stat. (U. S. Comp. Stat. 1901, p. 684).

It is doubtful if the Supreme Court of the United States has ever squarely passed upon the subject, under the law as it is at the present time. The leading case, and one upon which all of the authorities cited appear to be based, is that of Toland v. Sprague, 12 Pet. 300, 9 L. ed. 1093. In that case, at p. 328, Justice Barbour, holding that circuit courts of the United States have no power to issue process to cite anybody from beyond the territorial limits of the district, states: "Congress might have authorized civil process from any circuit court to have run into any state of the Union. It has not done so." He held that the process acts of 1789 and 1792, touching the process in the several states, can have no effect when they contravene § 11 of the judiciary act of 1789, providing: "No civil suit shall be brought before either of said courts [of the United States] against an inhabitant of the United States . . . in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ." [1 Stat. at L. 79, chap. 20.]

Ortiz v. Alcalá del Olmo.

However, it is to be noticed that in this very case, the great Chief Justice, Mr. Taney, opened his dissenting opinion by the statement: "I concur with the majority of the court in affirming the judgment of the circuit court. But I do not assent to that part of the opinion which declares that the circuit courts of the United States have not the power to issue process of attachment against the property of a debtor who is not an inhabitant of the United States. It does not appear by the record that this point was raised in the court below; and I understand from the learned Judge who presided at the trial, that it was not made. . . . I think it advisable to abstain from expressing an opinion upon it; and do not assent to that part of the opinion of the court which declares that the process in question is not authorized by the acts of Congress." Mr. Justice Baldwin followed the Chief Justice in his dissent as to that point and said: "[I] . . . agreed with the Chief Justice in the opinion delivered by him; if it was necessary [I] . . . would go further as to the authority of the courts of the United States to issue foreign attachments." Mr. Justice Wayne, also, in that same case, concurred with the dissent of the Chief Justice and said: " [I] thought the circuit courts of the United States had authority to issue foreign attachments. The decision on that point is not necessary to the decision of this case."

Strange as it may seem, considering the importance of the subject, the only other decision of the Supreme Court of the United States that has been called to our attention (unless it is Chaffee v. Hayward, 20 How. 214, 15 L. ed. 851), passing upon the question at bar, is the case of Ex parte Des Moines & M. R. Co. 103 U. S. 795, 26 L. ed. 461. The issue in the circuit court in this latter case was a motion for a rule to show cause why a peremptory mandamus should not issue to the circuit court, commanding it to set aside its orders dismissing the suit

and dissolving the attachment, and to restore the case to its place on the docket, and to grant the order of service asked for. All the parties were within the United States. Chief Justice Waite, delivering the opinion, said: "This motion is denied (1) because it is an attempt to use the writ of mandamus as a writ of error to bring here for review the judgment of the circuit court upon a plea to the jurisdiction filed in the suit; and (2) because if a writ of mandamus could be used for such a purpose the judgment below was clearly right. Under § 739 of the Revised Statutes, no civil suit, not local in its nature, can be brought in the circuit court of the United States, against an inhabitant of the United States, by original process, in any other state than that of which he is an inhabitant, or in which he is found at time of serving the writ." So it seems that even in this latter case, the question was not necessary to a decision of the suit. The trouble all arises because of § 11 of the judiciary act of 1789, aforesaid, and because all the circuit courts that have passed on the question hold that no act of Congress with reference to process has changed the rule set out in that act and all subsequent amendments of it.

The case of Pennoyer v. Neff, 95 U. S. 714, 24 L. ed. 565, is cited by nearly every court that has passed upon this question since 1877, but to our mind that case does not touch the question at all; the only thing that is decided there is that a judgment *in personam* can never be rendered against a defendant not personally served with process within a state.

Toland v. Sprague went up from the state of Pennsylvania to the Supreme Court of the United States in 1838, and it seems from that case that foreign attachments had for many years been permitted under the state laws of Pennsylvania, and the same practice followed in the Federal courts there.

On June 1, 1872, Congress passed an act which is now § 915

of the Revised Statutes (U. S. Comp. Stat. 1901, p. 684), providing that, "in common-law causes in the circuit and district courts, the plaintiff shall be entitled to similar remedies by attachment or other process against the property of the defendant, which are now provided by the laws of the state in which such court is held, for the courts thereof." Three years later, in 1875, in Guillon v. Fontain, 1 N. Y. Week. Dig. 269, Fed. Cas. No. 5,861, the circuit court for the eastern district of Pennsylvania, after stating that such had been the practice as far back as 1809 in the Federal courts of that district, at least up to the time of Toland v. Sprague, held that this act of June 1, 1872, had greatly enlarged the authority of the Federal courts in the employment of remedies, and, after quoting the material portion of the act as above, said: "The Federal courts in [this state] . .. . are thus invested with undoubted authority to proceed against nonresident persons by attachment [of their property], as may be done by the laws of the state." This is the only case at circuit which counsel have presented to the court, or that it has been able to find, holding squarely that the act of June 1, 1872, empowers circuit courts of the United States to obtain service by substitution in foreign attachment cases.

In 4 Federal Statutes Annotated, p. 579, begins a series of notes on the question of foreign attachment in the Federal courts, and, referring to the act in question, sets out that: "This act does not confer upon United States courts jurisdiction to entertain suits by the process of foreign attachment, and . . .. the statute and any rule adopting the state laws do not give a circuit or district court power thus to acquire jurisdiction over a person not a resident of the district, nor served with process therein." Citing Central Trust Co. v. Chattanooga, R. & C. R. Co. 68 Fed. 685; Harland v. United Lines Teleg. Co. 6 L.R.A. 252, 40 Fed. 308; Anderson v. Shaffer, 10 Fed. 266;

Nazro v. Cragin, 3 Dill. 474, Fed. Cas. No. 10,062. Those notes further quote from Erstein v. Rothschild, 22 Fed. 61, and say: "It is to be noted, in respect to this enactment, in the first place, that although its terms cover the case of a foreign attachment, properly so-called, being process *in rem* against the goods and lands of a nonresident or absconding debtor, yet no such process can, in fact, issue unless the defendant can be personally served with summons in the district in which the suit is brought; for by § 739, Rev. Stat. no suit can be brought against an inhabitant of the United States in any other district than that of which he is an inhabitant or in which he is found at the time of serving the writ, except in the case of absent defendants, under § 738, when suit is brought to enforce a lien upon real or personal property."

In Crocker Nat. Bank v. Pagenstecher, 44 Fed. 705, it was held that the provision of the judiciary act of 1789, which is now § 1 of the act of 1888, holding that no suit shall be brought in the circuit court against any person, etc., in any other district than that whereof he is an inhabitant, applies only to suits commenced in that court, and has no bearing on the jurisdiction of the circuit court of cases removed to it from a state court, where defendant was not a resident of the district, and wherein the state court had acquired jurisdiction by foreign attachment without personal service.

We were also referred to many other authorities; many of which we examined, such as Carter's Jurisdiction of Federal Courts, pp. 170–172, with a large number of cases cited therein; Cooper v. Reynolds, 10 Wall. 309, 19 L. ed. 931; 2 Desty, Fed. Proc. p. 851; Saddler v. Hudson, 2 Curt. C. C. 6, Fed. Cas. No. 12,206; Chittenden v. Darden, 2 Woods, 437, Fed. Cas. No. 2,688; Shainwald v. Lewis, 6 Sawy. 585, 5 Fed. 510; Dormitzer v. Illinois & St. L. Bridge Co. 6 Fed. 217; Boston

Electric Co. v. Electric Gas Lighting Co. 23 Fed. 838; Noyes v. Canada, 30 Fed. 665; Horsford v. Gudger, 35 Fed. 388; Lackett v. Rumbaugh, 45 Fed. 23; Compton v. Jesup, 15 C. C. A. 397, 31 U. S. App. 486, 68 Fed. 263. The result of an examination of all these authorities is, that the overwhelming weight of authority is against the jurisdiction.

The Supreme Court of the United States in the case of Henrietta Min. & Mill. Co. v. Johnson, 173 U. S. 224, 43 L. ed. 677, 19 Sup. Ct. Rep. 402, which came up from the supreme court of the territory of Arizona in 1898, referring to the contention that there was a failure by the legislature of Arizona to provide for service upon corporations doing business in that territory, where the corporation had no agent upon whom the process might be served under the statute, said: "It is incredible that the legislature should have intended to limit its own citizens to such an insufficient remedy when the corporation is actually doing business in the territory and is represented there by a manager or local agent."

The statement has some bearing here. It is almost incredible to think that Congress has made no provision permitting a proceeding *in rem* in courts of the United States, although the class of citizens or persons who are most likely to want to invoke process in foreign attachment are given the right to sue in those courts. Yet, if all these holdings are right,—and they are so numerous that it would be presumptuous to state the contrary,—then Congress has so failed, and this court is without jurisdiction to entertain this suit.

It appears that a previous judge of this court has, in a measure, passed upon this question. The matter before the court was a motion to amend rule 10, so as to include foreign attachments. He refused to amend the rule, and held strictly to the doctrine laid down by the Supreme Court in Toland v. Sprague,

but admits that in suits to enforce liens for purchase money, mortgages, etc., the mode of notifying defendants by publication is properly provided for by law. 1 Porto Rico Fed. Rep. 450.

The court is of opinion that this cause of action, being a tort, does not come within § 8 of the judiciary act of 1875, which provides for citation by publication when the suit is brought "to enforce any legal or equitable lien upon, or claim to, or to remove any encumbrance or lien or cloud upon the title to real or personal property within the district where such suit is brought." [18 Stat. at L. 472, chap. 137, U. S. Comp. Stat. 1901, p. 513.] And therefore, although many authorities could be cited on that point, it is deemed unnecessary to discuss it.

The plea to the jurisdiction will therefore be sustained, the alleged service quashed, and the attachment dissolved, with costs.