Commonwealth ex rel. Duff, Attorney General, *v.* Keenan et al.

Argued June 30, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*James H. Duff,* Attorney General, with him *William M. Rutter,* Deputy Attorney General, for petitioner.

*Joseph P. Sheridan,* for defendant, President Judge J. Hilary Keenan.

OPINION BY MR. CHIEF JUSTICE MAXEY, July 13, 1943:

This is a case of original jurisdiction in which James H. Duff, Attorney General of Pennsylvania, filed on June 4, 1943, a petition for a writ of mandamus against the judges of the court of common pleas of Westmoreland County to decide certain cases long pending in that

court and to file opinions and orders in those cases in the proper office, or to show cause, if any there be, why the same should not be done.

Westmoreland County has a population of 302,355 people, and the court of common pleas of that county consists of three judges, to wit: J. Hilary Keenan, who by virtue of seniority of service is President Judge, and two additional law judges, to wit, Richard D. Laird and George H. McWherter. Of these latter two, Judge Laird took office on the first Monday of January, 1938, and Judge McWherter on January 5, 1942. Judge Keenan took office on February 14, 1936.

In the Attorney General's petition for a mandamus he listed thirty-six cases which had been submitted to that court for determination on the dates set forth in that petition. All of these cases except six were submitted in 1942, the oldest having been submitted March 16,1942, and the youngest having been submitted March 9 and March 16, 1943, respectively. The petition averred that these cases had remained undecided at the time of the application for the writ of mandamus, thus hindering, delaying and prejudicing the rights of the litigants in those cases. The petition then referred to Rule 93 of the Supreme Court of Pennsylvania, which provides, inter alia, that [Section 4] "If any matter so submitted [to the proper court of common pleas] remains pending and undisposed of at the end of ninety (90) days after its submission, the judge having the matter in hand, or the senior judge of the court en banc to which the matter was submitted, shall forthwith report, in writing, the cause of the delay to the Chief Justice of the Supreme Court." [Section 5] "This rule shall apply to all equity, common law and statutory proceedings requiring decision, whether interlocutory or final."

The petition also contained proper averments as to want of other adequate remedy at law.

On June 24, 1943, Judge Richard D. Laird, filed his answer. He denies that certain cases which were con-

tained in the petition of the Attorney General were at any time submitted to him for determination. Those cases are the ones which in the Attorney General's petition we have numbered 1, 2, 3, 7, 9, 10, 12, 15, 16, 19, 20, 21, 22, 23 and 24. He avers further that since the year 1921 the Prothonotary of Westmoreland County has divided the cases for argument into two groups, (a) the Court in Banc argument list, and (b) the individual Judges' list, and that the last mentioned group is again divided into three parts, each of the judges taking one part, and he alleges that the above mentioned cases numbered 1, 2, 3, 7, 9, 10, 12, 15, 16, 19, 20, 21, 22, 23 and 24 were placed on the individual argument list of Judge Keenan by the Prothonotary and were argued before Judge Keenan sitting alone.

He admits that some of the cases in controversy mentioned in the Attorney General's petition were argued before the Court in Banc of which he is a member, but says that it is impossible for him to dispose of the legal matters which come to him individually and to decide and dispose of all the cases and controversies which are submitted to and argued before the Court in Banc, and alleges that it is impossible for him to dispose of his own work and to decide and dispose of even one-half of the cases which are submitted to and argued before the Court in Banc in Westmoreland County. He then sets forth certain cases which were listed in the Attorney General's petition as having been argued before the Court in Banc and "voluntarily taken and accepted by his Honor, Judge Keenan, for determination and disposition." These cases are those numbered in the Attorney General's petition as 4, 5, 6, 8, 11, 13, 14, 17, 18, 25, 26, 27 and 28, making a total of thirteen cases. He admits that the cases we identify as Nos. 30 and 31 in the petition were assigned to him for decision, but that Judge McWherter being disqualified, he, Judge Laird, wrote the opinion in No. 31 and left the decree and opinion in Judge Keenan's chambers on October 26, 1942,

for disposition by Judge Keenan, and to the best of his knowledge the opinion and decree are still in the hands of Judge Keenan. He also alleges that Judge McWherter being disqualified, he, Judge Laird, prepared opinions and decrees in case No. 30 and also in Nevling v. Commercial Credit Company, No. 78 August Term 1937 (not mentioned in the Attorney General's petition), left the same in Judge Keenan's chambers for his judicial action, and that the cases remain undisposed of.

He admits that cases numbered 29 and 32 were argued before the Court in Banc and were assigned to Judge McWherter, that Judge McWherter prepared an opinion and decree which was concurred in by Judge Laird in case No. 29 and submitted the same to Judge Keenan, who has not disposed of it. Case No. 32 is in the hands of Judge McWherter.

He also avers that because of the neglect of court business by Judge Keenan, Judges McWherter and Laird have for the last year refrained from submitting any opinions or decrees in "court en banc" cases to Judge Keenan for approval or disapproval, but have handed such decrees down as "a majority of the Court concurring", in order to expedite the business of said Court.

He admits that cases we numbered 33, 34, 35 and 36 in the Attorney General's petition were assigned to him for determination and disposition, but that in Nos. 33, 34 and 35 no briefs were filed at the time of the argument, and in No. 36 no brief has yet been filed for or on behalf of the plaintiff. He further avers that because of the press of other business, opinions and decrees were not prepared or filed in the cases or causes mentioned in this paragraph before the issuing of the writ, and that opinions and decrees concurred in by Judge McWherter were filed June 12, 1943, in the cases we have numbered 33, 34 and 35, respectively, in the Attorney General's petition. He alleges that it is not physically possible for him to do any more work than he has been doing since January 1, 1938, and that he has at all times endeavored

to dispose of his own work with dispatch and assist in the disposition of Judge Keenan's unfinished business. He also avers that in January, February and March, 1942, he sat with Judge Gordon of Philadelphia County, specially assigned by the Supreme Court to Westmoreland County, and with Judge Gordon and Judge McWherter endeavored to dispose of a number of cases which remained undisposed of on Judge Keenan's desk, and he lists other judicial work which he and Judge McWherter and Judge Fetterhoof, specially presiding, disposed of in Westmoreland County. He also states that the argument list of Westmoreland County in December 1942 contained 37 cases and that Judge Keenan was not present at the argument and did not participate in hearing the same. The list was disposed of by Judges Laird and McWherter hearing and deciding 21 cases and continuing 16 cases until such time as Judge Keenan could be present, namely, January 27, 1943, at which time the 16 cases were disposed of as follows: 9 were continued, 1 settled, 3 assigned to Judge Keenan and 3 to Judge Laird, two of which latter were Kennedy v. Zanarini (No. 36) and Fulcomer v. Penna. Railroad Company (No. 35) of the Attorney General's petition.

He also sets forth that the Court in Banc argument list for the May Term 1943 was set for hearing June 16, 1943, and contained 21 cases, that Judge Keenan was not present in court and took no part in hearing the arguments, and that he and Judge McWherter disposed of the list in the following manner: 10 cases continued, 5 cases assigned to Judge McWherter, and 6 cases assigned to Judge Laird. He avers that there is too much legal work in Westmoreland County for *two* Common Pleas Judges to handle. He says that because of the failure of Judge Keenan to act, decide and dispose of cases and causes presented to him when sitting alone, members of the Bar, Attorneys and Counsel refuse to present matters to Judge Keenan for hearing, holding the same for presentation to Judge McWherter and Judge Laird and thus unduly increasing their work.

He concludes by saying that there is nothing on his desk undisposed of except cases argued June 15 and 16, 1943, and he prays that he may be dismissed from these charges.

Judge McWherter in his answers makes statements which are in accord with those made by Judge Laird. He also sets forth that on or about the 15th day of May, 1943, he received a letter from the Chief Justice of the Supreme Court of Pennsylvania, as did Judge Laird and Judge Keenan, directing the immediate disposition of the case of Foley, et al. v. Smay, et al., which had been listed in the courts since 1937. On the receipt of such communication, after consultation with Judges Laird and Keenan, he prepared a "per curiam" opinion which was filed May 25, 1943, adopting substantially the earlier opinion which Judge Keenan had prepared in the case. He says that "Along with Judge Laird I have cooperated in every way possible to relieve the situation which has resulted from the congestion of cases on the desk of President Judge Keenan. For the past year we have handed down many majority opinions without submitting them to the President Judge, in order to avoid the possibility of delay while awaiting the concurrence of the President Judge." He then submits a schedule of the number of cases disposed of by the several judges of the type indicated requiring opinions and decrees filed between January 5, 1942, and the date of his answer, which is June 25th. The answer contains the following table showing the amount of work done respectively by these three judges:

| | Judge Keenan | Judge Laird | Judge McWherter |
|---|---|---|---|
| Opinions and Decrees | 4 | 103 | 111 |
| Decrees in Divorce | 14 | 44 | 305 |
| Appointments of Guardians for weakminded persons | 6 | 12 | 24 |
| Equity Cases | 5 | 13 | 18 |
| Change of Name Proceedings | 19 | 20 | 66 |
| Hearings and Orders on Petition | 6 | 6 | 18 |

This table reveals the measure of Judge Keenan's neglect of duty. Out of 218 opinions and decrees filed in his court in the period between January 5, 1942, and June 25, 1943, only 4, i. e., 2%, were filed by the President Judge. Of divorce cases he disposed of only 4%.

Judge Keenan in his reply filed June 26, 1943, admits that "for the reason hereinafter set forth" he has neglected the "performance of his public duty" as set forth in the Attorney General's petition. He admits that "all of the cases" listed in the petition for mandamus, except Nos. 32, 33, 34, 35 and 36, were on June 5, 1943, "in his hands for disposal on the respective dates therein set forth", but he avers that between June 5th and the date of his answer he has disposed of those cases which we have numbered 17, 21, 29, 30 and 31 in the petition. He avers that "his failure to dispose of said cases was and is due to his ill health". He assigns the same reason for his failure to file the report required by Rule 93 of this Court. He says nothing whatsoever about the nature or duration of his "ill health".

The Attorney General filed a statement saying that he does not challenge the averments in the replies of Judges Laird and McWherter; to Judge Keenan's reply he demurs.

This court likewise accepts the statements of Judges Laird and McWherter as verity. We take judicial knowledge of their diligent attention to their official duties, and we agree with them that they without the aid of a third judge cannot perform in a satisfactory manner all of the work of the civil and criminal courts of Westmoreland County. We absolve them of responsibility for the failure of the Courts of their county "to administer justice without denial or delay", and we commend them for their fidelity to duty and for their candor in revealing in their answers the low estate to which the administration of justice in that county has fallen and in placing responsibility therefor where it belongs.

The Attorney General has acted wisely in demurring to the answer of President Judge Keenan, for it is ele-

mentary that "the want of definite allegations essential to a cause of action or defense renders a pleading subject to demurrer":[1] 21 R. C. L. 80, citing *Southern R. Co. v. King*, 217 U. S. 524; *Joannes v. Burt*, 6 Allen (Mass.) 236, 83 Am. Dec. 625.

Judge Keenan's averment of "illness" is too indefinite and uncircumstantial to constitute a well-pleaded defense. The nature of the alleged "illness" which he pleads as an excuse for his prolonged neglect of his duties is a matter of such general notoriety as to make every reasonably informed person within Westmoreland County and all the members of this Court well acquainted with it.[2]

This court takes judicial notice of the nature of the "illness" pleaded by Judge Keenan. What is so well

[1] Mere averments or legal conclusions are not admitted by a demurrer unless the facts and circumstances set forth are sufficient to sustain the allegation: *Horsford v. Gudger*, 35 F. 388. "Where the averments are so uncertain that the elements of a cause of action or defense are not disclosed, a general demurrer will lie": 49 C. J. 378, Sec. 475. "A 'demurrer' is not an absolute admission of any fact, but simply admits those facts that are well pleaded for the sole purpose of having their legal sufficiency determined by the court": *Doughty v. Pallissard*, 3 N. Y. S. 2d 452, 454, 167 Misc. 55.

[2] Complaints of Judge Keenan's neglect of duty have been coming to this court for several years. A little more than a year and a half ago we assigned Judge Gordon, of Philadelphia County, to Westmoreland County to decide a large number of cases which for an undue period had been undisposed of by Judge Keenan. Judge Gordon executed this assignment in a most satisfactory manner. Other complaints concerning Judge Keenan and his neglect of duty began to be received by this court in May of this year. Under date of May 12, 1943, the Chief Justice of this court wrote Judge Keenan calling his attention to his failure to report under Rule 93 his delay in disposing of twenty-five cases submitted to him for decision more than four months previously, some of them more than a year previously, and pointing out that his neglect of duty "amounted to a denial of justice" and that if he did not proceed to dispose of these cases within ten days "the Supreme Court will take such action as the situation calls for". This letter was not answered. Under date of May 15, 1943, the Chief Justice of this court wrote Judge Keenan, as follows: "I just have received a letter from Mrs. Lena Smay, of Blairsville, Pennsylvania, a woman seventy-eight years of age, stating that al-

known as to be incontestable need not be proved formally. We adjudge the "illness" pleaded to be of such a self-inflicted nature as to afford no excuse whatsoever for the pleader's failure to perform the duties which he was elected to perform, which he took an oath to perform, and which he is paid to perform.

The failure of a judge to perform promptly the duties of his position, unless he is prevented from doing so by substantial illness or by other circumstances over which he has no control, is one of the most grave breaches of that fidelity which every official owes to the sovereignty he is chosen to serve.

It is the constitutional right of every person who finds it necessary or desirable to repair to the courts for the protection of his legally recognized interests "to have justice administered without sale, denial or delay" :[3] (Art. I, Sec. 11 of the State Constitution). Any judge who either by his "sale", his "denial", or his "delay" of justice destroys or prejudices a suitor's rights subjects himself to removal from office under either of the two methods prescribed in Article VI, Sec. 4 of the Constitution.[4]

---

though exceptions were filed more than a year ago to the opinion filed in her case by Judge James Gay Gordon, Jr., specially assigned to Westmoreland County at that time, you have not yet handed down an opinion on behalf of the court en banc in that case. Such neglect of judicial duties is a serious breach of trust and unworthy of any judge anywhere. We direct your court to hand down this opinion within the next ten days. Let me know whether or not you propose to do so." To this letter also Judge Keenan made no reply. (Judges Laird and McWherter disposed of Mrs. Smay's case on May 25th, though it had been assigned more than a year earlier to Judge Keenan.)

[3] The 29th Chapter of Magna Carta has been characterized as "the foundation of the liberty of Englishmen". It consists of two sentences, the second one of which reads as follows: "To none will we sell, to none deny, to none delay, either right or justice."

[4] See *Com. ex rel. Likely*, 267 Pa. 310, 314, 110 A. 167. "Misbehavior in office" justifying the incumbent's removal does not neces-

The remedy of mandamus is well chosen here, and the Attorney General is the proper party plaintiff. Article V, Sec. 3 of the Constitution confers upon the Supreme Court "original jurisdiction . . . of mandamus to courts of inferior jurisdiction".[5]

The Act of June 8, 1893, P. L. 345 (12 PS Sec. 1914) provides that "when the writ [of mandamus] is sought to procure the enforcement of a public duty, the proceeding shall be prosecuted in the name of the commonwealth on the relation of the attorney general." At common law judges of any subordinate court who delay in rendering judgment could be compelled to do so by writ of procedendo. Blackstone in his Commentaries Book 3 Sec. 109, says: ". . . Refusal or neglect of justice, is remedied either by writ of *procedendo,* or of *mandamus.* A writ of *procedendo ad judicium* issues out of the court of chancery, where judges of any subordinate court do delay the parties; for that they will not give judgment either on the one side or the other, when they ought so to do. In this case a writ of *procedendo* shall be awarded, commanding them in the king's

---

sarily involve an act or acts of a criminal character: *People ex rel. Rusch v. Greenzeit,* 277 Ill. App. 479. The phrase "misconduct in office" is broad enough to include any wilful malfeasance, misfeasance or nonfeasance in office: *State v. Slover,* 113 Mo. 202, 20 S. W. 788. The official doing of a wrongful act or official neglect to do an act which ought to have been done, will constitute the offence of misconduct in office, although there was no corrupt or malicious motive: Mechem, "Public Officers". All acts of misbehavior whose natural tendency and effect are to interfere with the administration of justice, wherever the acts may be committed, amount to contempt of court: *U. S. v. Huff,* 206 F. 700.

[5] The Act of May 22, 1722 (1 Smith's Laws 140) confers upon this court the power of the Court of King's Bench at Westminster. The Court of King's Bench has the power, inter alia, to "command magistrates and others to do what their duty requires, in every case where there is no other specific remedy. It protects the liberty of the subject by speedy and summary interposition": 3 Blackstone Com. Sec. 42. See *Com. v. Ragone,* 317 Pa. 113, at 127 (176 A. 454), and the Act of June 16, 1836, P. L. 785.

name to proceed to judgment; but without specifying any particular judgment, for that (if erroneous) may be set aside in the course of appeal, or by writ of error or false judgment; and upon further neglect or refusal, the judges of the inferior court may be punished for their contempt by writ of attachment returnable in the king's bench of common pleas." The writ of mandamus is also a specific remedy for the relief of the same evil, i. e., for delay in rendering judgment. The Act of June 8, 1893, supra, specifically provides that a writ of mandamus may be used to procure the enforcement of a public duty.

We find and adjudge that the cases listed below and to which we have prefixed numbers indicating the order in which they are listed in the Attorney General's petition, are cases which have been pending in the Court of Common Pleas of Westmoreland County for from sixteen weeks to sixteen months after their submission, that they have been and are there now awaiting judicial determination, that these cases were duly assigned under the practice of the Court of Westmoreland County to President Judge J. Hilary Keenan for judicial action and that as to them he has been and is unlawfully delaying justice. These cases are as follows:

1. Kregar v. Swartz et al., No. 349 Aug. Term 1939

2. Univ. Credit Co. v. Magee, No. D.S.B. 329 Nov. T. 1935

3. Finlon v. Finlon, No. 406 Nov. T. 1941

4. Cignetti et al. v. Gugik et al., No. 13849 M.L.D.

5. Hoke, Jr. et al. v. Newsham, No. 615 Aug. T. 1936

6. Caruthers v. Peoples Natural Gas. Co., No. 1892 Equity

7. Copeland v. Copeland, No. 540 Feb. T. 1938

8. Henry et al. v. Vinck, No. 596 Aug. T. 1939

9. Slezycki et al. v. Waitis, No. 273 May T. 1942

10. Peterson et al. v. Peterson, No. 305 May T. 1942

11. Home Owners Loan Corp. v. Wolchick et al., No. 1734 In Equity

12. Arnold Lumber Co. v. Guzik et al., No. 35 Aug. T. 1941

13. Penna. Turnpike Com. v. Errett et al., No. 289 Aug. T. 1939

14. Donnelly v. Donnelly, No. 586 Aug. T. 1940

15. Arnold Lumber Co. v. Guzik et al., No. 13850 M.L.D.

16. Freedom Oil Co. v. Little, No. 641 Aug. T. 1941

18. Slonecker v. Yough & Ohio Coal Co., No. 313 Aug. T. 1942

19. Valo v. Ferner, No. 442 Nov. T. 1942

20. Pagona v. Patterson et al., No. 14304 M.L.D.

22. Dept. of Public Assistance v. Painter et al., No. 309 Nov. T. 1941

23. Macko et al. v. Bortz, No. 324 Nov. T. 1942

24. Macko et al. v. Bortz, Admr. et al., No. 325 Nov. T. 1942

25. Shuey et al. v. Koelbel, No. 81 Feb. T. 1942

26. Nowak v. Metro Orange, No. 331 Nov. T. 1941

27. Shaffer et al. v. Reed et al., No. 5 Nov. T. 1942

28. Tomasi v. Tomasi, No. 115 Feb. T. 1942

Holding the reply of the defendant President Judge J. Hilary Keenan *in*sufficient, we enter judgment against him, on plaintiff's demurrer. The replies of Judges Richard D. Laird and George H. McWherter are not traversed by the plaintiff. We accept these re-

plies as true and accordingly judgment is entered in favor of *these* two defendants.

We order that a peremptory writ of mandamus issue forthwith from this court directed to the defendant J. Hilary Keenan, President Judge of the Court of Common Pleas of Westmoreland County, commanding him to consider, decide and adjudicate all of the aforesaid cases and submit his decisions in these cases to the court en banc of that county and to confer with the court en banc as a member thereof and to file the decisions of the court in these cases in the proper office, and that all of this be done within sixty days from this date, this writ of peremptory mandamus to be returnable to this Court at 10 A. M. Monday, September 20, 1943; failure to comply with this peremptory mandamus will subject the defendant J. Hilary Keenan to an attachment directed against him and issuing out of this court for his disregard of its authority. This writ of mandamus is ordered out at the cost of the defendant J. Hilary Keenan.