Exton Drive-In, Inc., Appellant, *v.* Home Indemnity Co.

Argued May 5, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

reargument refused February 17, 1970.

*Harry Norman Ball,* with him *Carl K. Zucker,* for appellant.

*Herbert A. Barton,* with him *Swartz, Campbell & Detweiler,* for appellee.

*David N. Rosen,* with him *Jon Grossman,* and *Rose, Sherwin & Seltzer,* for appellee.

OPINION BY MR. JUSTICE POMEROY, November 28, 1969:

This action was commenced in 1956 when Exton Drive-In, Inc. (Exton) filed a complaint in assumpsit against The Home Indemnity Co. (Home) seeking damages under a performance bond in which Home and W. Arnold Blythe (Blythe) had bound themselves jointly and severally to Exton in the sum of $52,000. The bond was conditioned on the full and prompt per-

formance by Blythe of a contract between him and Exton for the grading and paving of a site for an outdoor motion picture theater. Exton alleged that this contract had not been fully and promptly performed and claimed damages in the amount of $42,500, being the profits allegedly lost because of delay in performance plus the estimated cost of remedying the defects in performance. Because the bond was a joint undertaking of Blythe as principal and Home as surety, Home impleaded Blythe as an additional defendant asserting joint and several liability. In his answer to the third party complaint, Blythe denied that he had breached the contract and brought a counterclaim against Exton for the unpaid balance of the contract price and for payment for certain additional work he had performed, allegedly at the request of Exton.

The case came on for trial before a judge sitting without a jury in May, 1960. Not until June, 1967, *over seven years after the trial was completed* did the judge enter his decision in this case. This decision was in the form of a verdict in favor of defendants Home and Blythe on plaintiff's original complaint and a verdict for Blythe on his counterclaim against Exton in the sum of $13,692.49; there were no findings of fact or conclusions of law. Exton filed numerous exceptions to this decision, which were overruled by the court *en banc* in June, 1968. This appeal followed. Not until April 18, 1969, seventeen days before this appeal was argued, did the trial judge file an opinion explaining the overruling of Exton's exceptions.

## Judicial Delay

Appellant contends that the lower court's failure to order a new trial *sua sponte* because of the inordinate delay between trial and decision was an abuse of discretion.

Appellant is correct that the court below had the power to grant a new trial *sua sponte*, if in its opinion justice so required. *Getz v. Balliet*, 431 Pa. 441, 446, 246 A. 2d 108 (1968); *Fisher v. Brick*, 358 Pa. 260, 262, 56 A. 2d 213 (1948). The question, then, is whether the court abused its discretion by failing to do so.

Nothing in the record indicates that any party was responsible for this delay; the fault appears to have been that of the trial judge. Such dereliction flouts the proud promise of the Magna Carta: "to none will we . . . deny, to none delay, either right or justice." It contravenes the guarantee of the Constitution of this Commonwealth that ". . . Every man . . . shall have . . . right and justice administered without sale, denial or delay." Article I, Section 11. It flies in the teeth of the statutory standard that the decision of a court sitting without a jury ". . . shall be filed . . . as early as practicable, not exceeding sixty days from the termination of the trial . . ."[1] The right to have justice administered without delay is a fundamental right which should not be infringed unless no other course is reasonably possible. *Kelly v. Brenner*, 317 Pa. 55, 59, 175 Atl. 845 (1934).

We said in *General Foods Corp.*, 429 Pa. 266, 271, 239 A. 2d 359 (1968), that as a matter of judicial administration we would not condone an eighteen month delay but that we could understand it. A seven year delay we neither condone *nor* understand; we can only

---

[1] Act of April 22, 1874, P. L. 109, §2, as amended, Act of July 10, 1935, P. L. 640, §1, 12 P.S. §689. While this statutory provision has been interpreted as directory rather than mandatory, *Commonwealth v. General Foods Corp.*, 429 Pa. 266, 271, 239 A. 2d 359 (1968), the constitutional and statutory provisions taken together create a positive duty that a court render its decision with all possible dispatch and certainly with more celerity than was shown in this case. See *Commonwealth ex rel. Duff v. Keenan*, 347 Pa. 574, 33 A. 2d 244 (1943).

deplore it. While there may have been extenuating circumstances of which we have no knowledge, we must express our sense of dismay and chagrin that a delay so protracted could occur in the courts of this Commonwealth in the 1960's.

Our unhappiness with this delay is not, however, a sufficient ground for ordering a new trial, for such an order would still further defer the end to this litigation. If the facts of this case support the decision as rendered, we would compound the injustice by requiring the parties to return to their pre-1960 positions and begin anew the trial of this case. Accordingly, we hold that the lower court's failure to grant a new trial solely because of the long-delayed decision was not an abuse of discretion.

## Standard of Review

Appellant further contends that a new trial is necessary because the evidence contradicts rather than supports the decision of the court below. That decision, as mentioned above, is in the form of a naked verdict for Blythe and Home on the original complaint and for Blythe on his counterclaim; there are no findings.[2] In such a case we must make an independent review of the record. *Idell v. Falcone*, 427 Pa. 472, 473-4, 235 A. 2d 394 (1967); *Ballinger v. Howell Mfg. Co.*, 407 Pa. 319, 180 A. 2d 555 (1962). Cf. *Yoo Hoo Bottling Co. of Pa. v. Leibowitz*, 432 Pa. 117, 119, 247 A. 2d 469 (1968).

In reviewing this record we must evaluate the contentions of Exton that there were four material breaches of the contract by Blythe and that the verdict

---

[2] A court sitting without a jury need not separately and distinctly state findings of fact unless the court is requested to do so by counsel for either party. Act of April 22, 1874, P. L. 109, §2, as amended, Act of July 10, 1935, P. L. 640, §1, 12 P.S. §689.

was against the evidence. The material breaches alleged by Exton are: (1) failure to complete the contract work within the time period specified in the contract; (2) failure to make the paved surface impervious to water as required by the contract; (3) failure to use the required minimum quantities of materials; and (4) failure to grade and pave the area to allow proper drainage.

## Timely Performance

The contract between Blythe and Exton specified that time was of the essence and required Blythe to complete the grading and paving of the drive-in theater site within thirty-eight working days of the contract date. This provision as to timely performance gave Blythe notice that a delay in completion of the contract would delay the opening of the theater and result in losses for Exton. Losses caused by Blythe's failure to make timely performance were accordingly foreseeable. The *Restatement of Contracts,* §346 (1932) provides as follows: "(1) For a breach by one who has contracted to construct a specified product, the other party can get judgment for compensatory damages for all unavoidable harm that the builder had reason to foresee when the contract was made, less such part of the contract price as has not been paid and is not still payable, determined as follows . . . (b) For any delay in completion fairly chargeable to the builder, the plaintiff can get judgment for the value of the use of the product, if it was being constructed for use." We believe this rule is proper and sound. Cf. *Lever v. Lagomarsino,* 282 Pa. 110, 114, 127 Atl. 452 (1925). Its application in the present case would permit Exton to recover damages from Blythe for the difference between the losses caused by delay in the use of the theater and the unpaid balance of the contract price, provided only that

Exton proved (a) a failure of timely performance, and (b) resulting damages which were sufficiently certain to permit recovery.

From the evidence adduced at trial, we believe Exton did establish a failure of timely performance. Even adopting *arguendo* Blythe's definition of "working day", viz., a day on which site and weather conditions were favorable, we are persuaded that the evidence supports the conclusion that there were more than thirty-eight such days between the date of the contract (April 11, 1956) and the date upon which Blythe himself contends the work under the contract was completed (August 29, 1956).

We cannot agree, however, with appellant's contention that he proved attendant losses with sufficient certainty to permit recovery. This Court has held that a party seeking damages for breach of contract "must be able to prove such damages with reasonable certainty." *Wilcox v. Regester*, 417 Pa. 475, 484, 207 A. 2d 817 (1965). See also *Nakles v. Union Real Estate Co. of Pgh.*, 415 Pa. 407, 411, 204 A. 2d 50 (1964). "Compensation for breach of contract cannot be justly refused because proof of the exact amount of loss is not produced . . . [T]he law does require . . . that the evidence shall with a fair degree of probability establish a basis for the assessment of damages." *Massachusetts Bonding & Ins. Co. v. Johnston & Harder, Inc.*, 343 Pa. 270, 280, 22 A. 2d 709 (1941).

This rule is in accord with the *Restatement of Contracts*, §331 (1932), which specifies: "(1) Damages are recoverable for losses caused or for profits and other gains prevented by the breach only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty. (2) Where the evidence does not afford a sufficient basis for a direct estimation of profits, but the breach is one that prevents the use and operation of property from

which profits would have been made, damages may be measured by the rental value of the property or by interest on the value of the property."

Considered in the light of these principles, we think it clear that appellant was not entitled to damages because of Blythe's belated performance. The evidence shows that Blythe's delay in completing the work did not delay the theater opening. Since the motion picture screen itself was not installed until a few days before the scheduled opening, the theater could not have opened sooner than it did.

Exton contends, however, that because of the unfinished condition of the theater when it opened its revenues were less than they might have been; this loss of anticipated profits is the only damage claim attributable to delay. Under the circumstances of this case, we hold that the anticipated profits of a new and untried business which were attributable solely to the unfinished condition of the business premises were too speculative to provide a basis for an award of damages.

Where a contractor's failure of timely performance delayed the opening of a drive-in theater, the Maryland Court of Appeals upheld a ruling by the trial judge which barred evidence tending to show the loss of anticipated profits. The Court cited §331 of the *Restatement, supra,* and declared that such damages were too speculative to merit recovery. *Evergreen Amusement Corp. v. Milstead,* 206 Md. 610, 112 A. 2d 901 (1955). The damages in the present case are still more speculative, since the opening of the theater was not actually delayed.

The speculative nature of the damages here alleged to have resulted from Blythe's failure of timely performance renders them unrecoverable. This failure of performance, therefore, did not give rise to any liability on the part of Blythe. Since "the liability of

the surety is no greater than [that of] its principal," *East Crossroads Center, Inc. v. Mellon-Stuart Co.*, 416 Pa. 229, 231, 205 A. 2d 865 (1965), Home also had no liability under its performance bond because of this failure of timely performance. We hold that the trial court did not err in refusing to award damages to Exton on this ground.

## Other Alleged Breaches

As noted above, Exton alleged three other material breaches of the contract: (1) failure to make the paved surface impervious to water, (2) failure to use the required minimum amounts of materials, and (3) failure to grade and pave the area so it would drain properly. The court below found no merit in these allegations, holding that Blythe had substantially performed these aspects of its contract.

With that conclusion we must agree. Caught between adverse site conditions due to frequent rains and Exton's officer who admitted, "I was rushing Blythe, yes," Blythe sought to finish the job on time and went ahead with the grading and paving even though the soil conditions were bad. The evidence shows that the grading and paving were within a close tolerance of the contractual specifications. It also shows that the paving was impervious to water except where it had broken up. The evidence as to the causes of this deterioration is not clear, but adverse soil conditions at the time of paving and subsequent use of the theater area seem to have been the prime causal factors. The observations of Exton's nonexpert theater employees as to the quantity of materials used constitute the only evidence in support of Exton's claim that Blythe failed to use the required minimum quantities of materials. This testimony lacks probative value, and was, moreover, contradicted by substantiated testimony that ade-

quate quantities of materials were used. The weight of this testimony is further diminished by uncontradicted testimony that the site was wet at the time the stone and gravel were laid, and that these materials sank into the wet soil when rolled.

We conclude that the evidence does not support Exton's three additional allegations of material breach. Further, despite a default notice sent to Blythe by Exton, he returned to the job thereafter, and worked intermittently from August, 1956 to May, 1957 to correct the defects which had appeared. The evidence sufficiently demonstrates that any defects in the workmanship were not the result of willful, material breaches of this contract by Blythe. *Restatement of Contracts*, §275 (1932).

## Damages for Nonmaterial Breaches

Given Blythe's substantial performance of the contract, Exton was limited to recovering damages for any nonmaterial breaches as a setoff against Blythe's claim for the balance of the contract price. In order to recover such damages, however, it had the burden of proving them. Exton's only proof of damages due to faulty workmanship was an estimate of repair costs prepared by another contractor as a unit price approximation; this estimate was made prior to some of Blythe's own repair work. Although the estimated cost of repair amounted to between one-third and one-half of the original contract price, Exton never considered the defects serious enough to contract for any portion of this repair work during the four-year period between the commencement of this suit and the trial. This estimate was not a sufficient basis for the award of damages to Exton. We hold, therefore, that the trial court correctly decided against Exton on the original complaint and for Blythe on its counterclaim for the balance of the contract price.

## Claim for Additional Work

Finally, Exton contends that the trial court incorrectly awarded the cost of certain extras to Blythe, since no written architect's order for them was obtained by Blythe as required by the contract. Exton, however, waived this requirement by its failure to employ an architect to supervise the performance of the work. Further, the evidence supports Blythe's contention that Exton's on-site representative requested that he do the extra work and that this work benefited Exton. The trial court did not err in awarding the cost of this work to Blythe. See *Universal Builders, Inc. v. Moon Motor Lodge, Inc.*, 430 Pa. 550, 557-8, 244 A. 2d 10 (1968).

Finding no error in the decision below, we affirm the judgment.

Mr. Chief Justice BELL and Mr. Justice EAGEN concur in the result.

———

DISSENTING OPINION BY MR. JUSTICE COHEN:

In addition to the reasons advanced by Mr. Justice ROBERTS for a remand, I further question the proceedings in the court below. The action was tried in the court below, without a jury on May 3, 4, 6 and 9, 1960. On July 29, 1966 appellee, W. Arnold Blythe, instituted an action in mandamus to compel a decision by the trial judge. Considering the great delay that had already occurred, the filing of that action made it impossible for the trial judge to fulfill properly his functions. That is, through the institution of that action, he was no longer an independent, disinterested trier of fact, but rather a litigant himself. The filing of the action may have prejudiced him against the party pursuing that course. The refusal of that party to press that action may have created a bias in favor of that party. It does not matter what the judge's decision

ultimately was. The important thing is that he was placed in a position in which it would have been impossible to exercise his powers of judgment free of any interest in the matter. Therefore, I dissent.

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

There is no doubt that a seven year delay between the completion of a nonjury trial and the rendition of a general verdict thereon is shockingly excessive. The majority well expresses my feeling of strong disapproval. Unlike the majority, however, I feel that the delay constitutes a denial of due process and requires the grant of a new trial.

One of the basic reasons for holding a trial is to resolve disputed factual questions. The primary responsibility for this task is placed on the trier of fact. It is argued, and I think correctly, that having heard the testimony and seen the witnesses the trier of fact is in the best position to weigh the probative value of the evidence. In accordance with this belief we accord such findings great weight and are reluctant to reach different conclusions on the basis of cold records.

I think it clear that appellant was denied its right to have its evidence received and judged in this kind of a proceeding. It is impossible that the trier of fact—here the trial judge—could have remembered very much if anything of the evidence offered at trial. His decision was in effect rendered on a cold record. I would analogize the situation in this case to those instances in which a trier of fact dies after the conclusion of the trial and before rendition of a decision. In those cases it is required that the case be retried, even though a complete record of the trial may exist. *Carlsson v. Pennsylvania General Insurance Company*, 417 Pa. 356, 207 A. 2d 759 (1965); 48 C.J.S. Judges, §56(b).

I note that the disposition of this case depended entirely on the resolution of disputed factual issues. The

trial judge said in his opinion that ". . . the court deems it unnecessary to cite legal authority as the issues involved are totally factual and the trier of fact resolved these issues against plaintiff . . . and in favor of the defendant . . . ." Court of Common Pleas of Philadelphia County, December Term 1956, No. 902, April 18, 1969.

I do not see how we can say that the appellant received a complete trial. I would vacate the judgment and remand for a new trial.

Mr. Justice COHEN joins in this dissent.