NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4524
_____

CONTINENTAL CASUALTY COMPANY

v.

FLEMING STEEL COMPANY; SETH KOHN; KENDA KOHN,

Appellants
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-06-cv-00829)
District Judge:  Honorable William L. Standish
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 12, 2011

Before:  RENDELL, SMITH and FISHER, *Circuit Judges*.

(Filed:  July 25, 2011 )
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Fleming Steel Co. ("Fleming Steel") appeals an order of the District Court

granting summary judgment in favor of Appellee, Continental Casualty Company

("Continental Casualty"), on claims arising from a U.S. Navy construction contract. For the reasons discussed below, we will affirm.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

This case represents the remnants of a dispute over a construction contract at the Oceana Naval Air Station in Virginia Beach, Virginia. W.M. Schlosser Company, Inc. ("Schlosser"), was the prime contractor for construction of an acoustical aircraft enclosure or "hush house" for the Oceana project. Schlosser subcontracted work on the hush house's "acoustical intake sliding doors" to Fleming Steel. As required by the subcontract, Fleming Steel procured a performance bond, issued by Continental Casualty, to guarantee the quality of its work on the project. The performance bond, prepared by Schlosser, identified Fleming Steel as the principal on the bond with Continental Casualty as the surety.

According to Fleming Steel's President, Seth Kohn, the performance bond was not to include any indemnification provision covering attorneys' fees.[1] Mr. Kohn testified that he instructed Joseph A. Corriere, employee of Continental Casualty, not to include language covering attorneys' fees in the agreement. The performance bond, however, did

_____

[1] Mr. Kohn testified that the performance bond was to be consistent with the original subcontract, which did not contain any provision with regard to attorneys' fees.

2

include such language, stating that, in the event Fleming failed to "well and truly perform" its subcontract with Schlosser [Continental Casualty], "shall indemnify and save harmless [Schlosser] from any and all loss, damage, and expense, including costs and attorneys' fees" that Schlosser may sustain by reason of Fleming Steel's default on the subcontract. (App. at 36.) Despite the inclusion of this language, Mr. Kohn reviewed the terms and signed the one-page agreement.[2]

In 2002 Schlosser terminated its subcontract with Fleming Steel for the Oceana project due to Fleming Steel's failure to construct the acoustical intake sliding doors in accordance with contract specifications. Litigation ensued. Fleming Steel was ultimately found liable for breaching the subcontract and judgment was entered against Fleming Steel. Per the terms of the performance bond, Continental Casualty paid the Schlosser judgment which included a separate award of attorneys' fees. Consequently, Continental Casualty issued a demand in the District Court on Fleming Steel under the terms of the parties' General Agreement of Indemnity ("GAI"). In paragraph 2, the GAI provided:

> The Indemnitors [Fleming Steel] will indemnify and save [Continental Casualty] harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense which [Continental Casualty] may pay or incur in consequence of having executed, or procured the execution of such bonds, or any renewals or continuations thereof or substitute therefore, including, but not limited to, fees of attorneys, whether on salary, retainer or otherwise, and the expense of procuring, or attempting to procure,

---

[2] According to Mr. Kohn, he reviewed the performance bond agreement to the "best of [his] ability" and did not realize that, contrary to his alleged agreement with Mr. Corriere, the performance bond included a provision allowing Schlosser to recover for attorneys' fees. (App. at 147.) (verified statement of Seth Kohn).

3

> release from liability, or in bringing suit to enforce the obligation of any of the Indemnitors under this Agreement.

(App. at 31.) Fleming Steel did not object to Continental Casualty's indemnification claim in its entirety. Rather, its objection was limited to Continental Casualty's request for indemnification with respect to the award of attorneys' fees, and costs and interest on those attorneys' fees, issued in favor of Schlosser under the terms of the performance bond.

In November 2010, the District Court granted summary judgment in favor of Continental Casualty and against Fleming Steel in the amount of $499,522.61, determining that the amount was due under the terms of the GAI. Fleming Steel timely appealed.

## II.

The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1332, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the District Court's grant of summary judgment "is plenary, and we apply the same standard as the District Court." *Busch v. Marple Newtown Sch. Dist.*, 567 F.3d 89, 95 n.7 (3d Cir. 2009). Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact" and when the moving party "is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see G-I Holdings Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 253 (3d Cir. 2009). "To survive summary judgment, a non-movant must present sufficient evidence

4

to allow a reasonable jury to find in its favor." *Reliance Ins. Co.*, 586 F.3d at 253 (internal quotation marks and alterations omitted).

III.

Fleming Steel raises three issues on appeal. First, it contends that the District Court erred in granting summary judgment in favor of Continental Casualty because genuine issues of material fact existed with regard to whether Continental Casualty acted in bad faith by including a provision for attorneys' fees in the performance bond. Second, Fleming Steel contends that the District Court incorrectly determined that attorneys' fees were a recoverable damage element in favor of Continental Casualty in light of the exclusion of attorneys' fees in Fleming Steel's underlying subcontract with Schlosser. Third, and finally, Fleming Steel argues that the language of the GAI was ambiguous, and therefore, the District Court erred in not sending the issue to a jury. We will address each contention in turn.

A. Bad Faith

Courts recognize an exception to the general rule of enforcement of a principal's liability for a surety's payment to an obligee under a performance bond when there has been bad faith or fraudulent payment. *See Fid. & Deposit Co. v. Bristol Steel & Iron Works, Inc.*, 722 F.2d 1160, 1163 (4th Cir. 1983) (applying Pennsylvania law).[3]

---

[3] The District Court held that Pennsylvania contract law applies, a holding the parties do not dispute on appeal. *Continental Cas. Co. v. Fleming Steel Co.*, 2010 WL 4668955, at *5 (W.D. Pa. Nov. 9, 2010).

5

Accordingly, a properly supported claim of fraud or bad faith acts as a defense and creates a genuine issue of material fact. *U.S. Fid. & Guar. Co*. v. *Feibus*, 15 F. Supp. 2d 579, 585 (M.D. Pa. 1998).

On appeal, Fleming Steel argues Continental Casualty acted in bad faith by ignoring Mr. Kohn's instruction to omit attorneys' fees language in the performance bond, and then subsequently failing to contact Schlosser directly in order to delete the attorneys' fees provision. As evidence, Fleming Steel submits testimony from Kohn recalling correspondences he had with Corriere indicating his desire to strike the provision covering legal fees in the performance bond agreement.

Under Pennsylvania law, bad faith requires a showing of dishonest purpose or improper motive by "clear and convincing evidence." *Klinger v. State Farm Mut. Auto. Ins. Co.*, 895 F. Supp. 709, 713 (M.D. Pa. 1995); *Brown v. Progressive Ins. Co*., 860 A.2d 493, 500 (Pa. Super. 2004). Gross negligence or bad judgment is insufficient to amount to bad faith. *Klinger*, 895 F. Supp. at 714. Here, the evidence fails to demonstrate anything other than negligence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case."). As a surety, Continental Casualty had no financial incentive to include the attorneys' fee language in the performance bond. Any obligation to pay attorneys' fees in the event of a breach exposed both parties in this dispute to increased damages.

6

Furthermore, Schlosser, not Continental Casualty, prepared the performance bond, which Kohn subsequently reviewed and signed, without any objection to the attorneys' fees provision. These facts do not imply Continental Casualty acted dishonestly, or was attempting to conceal the attorneys' fees provision from Fleming Steel prior to executing the agreement. To the contrary, the evidence here suggests negligence, not bad faith, on behalf of Continental Casualty. *See*, *e.g.*, *Engbrock v. Fed. Ins. Co.*, 370 F.2d 784, 785-87 (5th Cir. 1967) (allegations that surety made excessive payments at most alleges negligence); *Fireman's Fund Ins. Co. v. Nizdil*, 709 F. Supp. 975, 976-77 (D. Or. 1989) (allegation that surety overpaid claim failed to raise an issue of material fact that would preclude summary judgment).

Accordingly, no reasonable juror could conclude that Continental Casualty acted in bad faith when it permitted the performance bond to include a provision for attorneys' fees.

## B. Recovery of Attorneys' Fees

On appeal, Fleming Steel argues that the original subcontract with Schlosser, not the GAI or the performance bond, should govern the scope of its liability to Continental Casualty. This argument is premised on the proposition that "the liability of the surety is no greater than that of its principal." *See Exton Drive-In. Inc. v. Home Indem. Co.*, 261 A.2d 319, 325 (Pa. 1969) (internal quotation marks and alterations omitted). In other words, Fleming Steel submits that a surety should not, as a matter of law, have the ability

7

to obligate its principal beyond what the principal has agreed to in the underlying contract. This argument is unpersuasive.

It is true that, under Pennsylvania law, "the liability of a surety is coextensive with that of the principal, and accordingly, a surety is bound to perform whatever may be legally required of its principal." *Diversified Utilities Sales, Inc. v. Monte Fusco Excavating Contracting Co.*, 71 F.R.D. 661, 664 (E.D. Pa. 1976). However, it is equally well-established that when determining whether a surety is liable for certain types of damages, the bond is the proper place to start because the true intent and meaning of the bond instrument, not the underlying contractor agreement, is the primary determinant of the extent of liability. *Salvino Steel & Iron Works, Inc. v. Fletcher & Sons*, 580 A.2d 853, 856 (Pa. 1990).

As previously discussed, the performance bond in this case undoubtedly provides for the recovery of attorneys' fees in the event of a default by Fleming. The bond was signed by Kohn and the evidence does not indicate bad faith with regard to the inclusion of the attorneys' fees provision. The GAI simply reinforces Fleming Steel's obligation to save Continental Casualty "harmless for every suit and judgment and expense which [Surety] may pay or incur in consequence of the Surety's execution of bonds including but not limited to fees of attorneys . . ." (App. at 31.) Thus by the terms of both the performance bond and the GAI, Fleming Steel was responsible for the payment of attorneys' fees in the event of a default on the underlying subcontract with Schlosser.

8

The fact that the subcontract with Schlosser itself did not include an attorneys' fees provision is largely irrelevant given the explicit terms of the performance bond.

## C. Ambiguity in the Language of the GAI

Finally, Fleming Steel argues that the language of the GAI is ambiguous, and therefore, the issue of attorneys' fees must go to a jury. Specifically, Fleming Steel maintains that the attorneys' fees referenced in the GAI relate exclusively to Continental Casualty's in-house attorneys' fees that are incurred pursuing the indemnity action, not attorneys' fees related to the award of a judgment. The language of the GAI does not support such a conclusion.

"The construction of an indemnity contract is a question of law for the court to decide."[4] *Jacobs Contractors, Inc. v. NPS Energy Servs., Inc.*, 264 F.3d 365, 371 (3d Cir. 2001) (citing *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986)). Under Pennsylvania contract law, "[w]here the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence, instead, the meaning of a clear and unequivocal written contract must be determined by its contents alone." *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 92 (3d Cir. 2001) (internal quotation marks and citations omitted). "[W]here language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as *manifestly expressed*, rather than as,

---

[4] In Pennsylvania, an indemnity agreement is to be construed using the law applicable to contracts generally. *Ratti v. Wheeling Pittsburgh Steel Corp.,* 758 A.2d 695, 702 (Pa. Super. Ct. 2000).

perhaps, silently intended." *Id*. at 92-3 (emphasis in original). Accordingly, because

Pennsylvania presumes that the writing conveys the parties' intent, a contract

> will be found ambiguous if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning. A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction. To determine whether ambiguity exists in a contract, the court may consider the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning.

*Id*. (internal quotation marks and citations omitted).

Here, paragraph 2 of the GAI provides that Fleming Steel will indemnify and save

Continental Casualty harmless

> from and against every claim, demand, liability, cost, charge, suit, judgment and expense which [Continental Casualty] may pay or incur in consequence of having executed, or procured the execution of such bonds, or any renewals or continuations thereof or substitute thereof, including, but not limited to, fees of attorneys, whether on salary, retainer or otherwise, and the expense of procuring, or attempting to procure, release from liability, or in bringing suit to enforce the obligation of any of the Indemnitors under this Agreement.

(App. at 31.) This language broadly covers any cost, charge, judgment or expense that is

a consequence of Continental Casualty having issued the performance bond. The costs of

the judgment against Fleming Steel would include attorneys' fees incurred on behalf of

Fleming Steel in defending the claims advanced by Schlosser. Indeed, the attorneys' fees

at issue here were part of the judgment in favor of Schlosser. This language does not

10

warrant the narrow interpretation advanced by Fleming Steel. To the contrary, paragraph 2 encompasses a comprehensive obligation on behalf of Fleming Steel to indemnify Continental Casualty. The language of paragraph 2 does not qualify, or otherwise provide exceptions to this obligation. Thus, we do not find Fleming Steel's narrow interpretation of paragraph 2 to be a reasonable one.

## IV.

Accordingly, we will affirm the judgment of the District Court.