MCINERNEY, J.,
This action arises from plaintiff SVNE Pharma, Inc.’s (“SVNE”) purchase of a pharmacy from defendant Northeast Philadelphia Pharmacy Inc. (“NEPP”) and its owner defendant Inna Sandler (“Sandler”). SVNE, owned by Pumachandra Roa Akkineni and Ramaswamy Ram Gummadi, operates pharmacies in the greater Philadelphia area. Defendant Sandler is the former president and sole owner of NEPP, a pharmacy which filled prescription medications and sold over-the-counter drugs and other front-of-house merchandise. NEPP issued coupons to its customers. The coupons were issued in several forms through the course of NEPP ⅛ ownership history and were redeemed by NEPP’s customers at designated local establishments. The cashiers at each of the local establishments knew the coupon’s value was $1.00. After collecting the coupons from customers, local merchants would then present the coupons to NEPP for their redemption.
In January or February 2011, Howard Brooker, a *441 representative of SVNE met with Sandler, to discuss the sale of NEPP to SVNE. Brooker visited the pharmacy on at least three occasions, once during regular business hours. On each occasion, Brooker was given a tour of the pharmacy as well as explanations as to how the business was conducted.[1]
On September 1, 2011, NEPP and SVNE executed an asset purchase agreement in which NEPP transferred its assets to SVNE for $2,000,000. This sale price was based on the stated revenues of the pharmacy. Included in the asset purchase agreement were warrants and representations issued by NEPP to SVNE. Particularly, § 3.14 of the asset purchase agreement, “compliance with law”, provides as follows:
“Seller [NEPP] complied in all material respects with all state and federal laws pertaining to the business and operation of the pharmacy. Sellers have complied with all third provider contracts and agreements. Sellers have complied in all material aspects with all existing laws, rules, regulations, ordinances, orders, judgments and decrees now or hereafter applicable to the assets, or the sale or transfer of the assets, including without limitation the transfer of controlled substances.”
Additionally, the asset purchase agreement confirms that the representations and warranties made by NEPP are true and not misleading in any material respect and assures *442 the buyer that neither the agreement or any exhibit “omits to state a material fact necessary in order to make the statements herein or therein, in light of the circumstances under which they were made, not materially misleading.”[2]
On September 16, 2011, SVNE took over the operations of the pharmacy with Brooker serving as pharmacist and manager. On September 19, 2011, Brooker began maintaining a coupon log to keep track of the reimbursement checks issued to the local businesses for the redeemed coupons.[3] The coupon log contains forty entries from September 19, 2011 through and including February 2, 2012. At some point, SVNE began to question the legality of the coupon program. SVNE never received a legal opinion regarding the legality of the coupon program.[4] SVNE did discuss its concerns about the coupon program with Sandler who informed SVNE that terminating the program would be disastrous. Additionally, SVNE alleges to have discovered during its operations that NEPP routinely waived customer co-pays for their prescriptions and issued a dollar coupon for each prescription filled by said customers.[5] SVNE stopped reimbursing the local merchants for the redemption of NEPP coupons by March 5, 2012. Defendant Sandler offered to purchase the pharmacy from SVNE on two *443 occasions, offering $700,000 and $500,000 respectively.[6] SVNE refused. As a result of the cessation of the programs, SVNE alleges the average weekly prescriptions decreased from more than 3,500 per week prior to February 18,2012 to less than 1, 500 per week after March 17, 2012. SVNE also alleges that the $10 million in gross revenue upon which the $2 million purchase price was based dwindled to $4.25 million in 2012 as the number of prescriptions declined from 123, 185 per year to 38,737 per year.
On August 23,2013, SVNE instituted the instant action for fraud (Count I), equitable fraud/rescission (Count II) and breach of contract (Count III). Defendants filed their first amended answer and new matter on June 4, 2014. Presently before the court is SVNE’s partial motion for summary judgment to Count I (breach of contract) and defendants’ motion for summary judgment to all of plaintiff’s claims alleged in the complaint.
DISCUSSION
I. The fraud claim is barred by the gist of the action doctrine.
In Count I of the complaint, SVNE purports to state a claim for fraudulent inducement. Specifically, SVNE alleges that defendants failed to disclose the illegal coupon program and illegal billing procedures it employed while it owned and operated the pharmacy and prior to the sale of the pharmacy. For the reasons discussed below, SVNE’s fraud claim is barred by the gist of the action doctrine.
The Pennsylvania Supreme Court recently decided *444 Bruno v. Erie Insurance Co.,[7] in which, for the first time, it opined on the standard to be used in applying the gist of the action doctrine. The Supreme Court found the duty-based demarcation first recognized by our courts over a century and a half ago to be sound and reaffirmed its applicability as the touchstone standard for ascertaining the true gist or gravamen of a claim by a plaintiff in a civil complaint.[8] In this regard, Bruno reaffirms that the substance of the claim is of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort is not controlling. For instance, if the facts of a particular claim establish that the duty breached is one created by the contract terms, such as a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract, then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant’s violation of a broader social duty owed to all individuals, imposed by the law of torts and exists regardless of the contract, then it must be regarded as a tort.[9]
Applying the forgoing to the facts at hand, it is clear SVNE’s fraud claim is not collateral to the asset purchase agreement. Defendants’ duties to disclose the coupon program and the billing procedures derive from the contract between SVNE and defendants. The asset purchase agreement required NEPP to make representations and warranties concerning the lawfulness and propriety of the operation of the pharmacy and confirmed and represented that defendants complied with all applicable state and *445 federal laws. As alleged by SVNE, defendants breached this warranty provision by failing to disclose the coupon program and the procedures. The duty to make such disclosure arises solely from the asset purchase agreement; hence the gist of the action is contract, not fraud. As such, the claim for fraud is barred by the gist of the action doctrine and Count I is dismissed.
II. Plaintiff’s equitable fraud/rescission claim is dismissed since plaintiff failed to act promptly in seeking rescission.
Count II of SVNE’s complaint purports to state a claim for equitable fraud/rescission. SVNE alleges defendants’ failure to disclose the coupon program and billing procedures that artificially inflated NEPP’s revenues and profits “constitutes an equitable fraud that renders the agreement a voidable contract, upon which SVNE is entitled to seek the remedy of rescission.” Defendants argue that they are entitled to summary judgment on the equitable fraud/rescission claim because SVNE waived any claim for equitable rescission by failing to act promptly. Prompt action is a prerequisite to the remedy of rescission.[10] The Pennsylvania Supreme Court explained as follows:
When a party discovers facts which warrant rescission of his contract, it is his duty to act promptly, and, in case he elects to rescind, to notify the other party without delay, or within a reasonable time. If possible, the rescission should be made while the parties can still be restored to their original positions. Failure to *446 rescind within a reasonable time is evidence, and may be conclusive evidence, of an election to affirm the contract.[11]
In the case sub judice, SVNE failed to promptly seek rescission. SVNE assumed the operation of the pharmacy on September 16, 2011. Although the issue of when SVNE became aware of the coupon program and billing procedures is disputed, it is clear from the record that SVNE knew the coupon program existed soon after the closing when it created a coupon log to keep track of reimbursement checks. Based on the forgoing, one could infer that SVNE became aware of the coupon program, eighteen days after the closing and three days after it assumed operation of the pharmacy. SVNE questioned Sandler about the program, continued to use the program even though it allegedly questioned the illegality of same and subsequently terminated the program on March 2012. At no time from September 19,2011, the date the first entry in the coupon log was made, and March 2012, the date the program was terminated, was rescission requested by SVNE. On August 2013, upon the filing of the complaint, SVNE made its first request for rescission, approximately two years from the date it first discovered the existence of the program. Based on the forgoing, the court finds there is no record evidence that SVNE acted promptly in seeking rescission. As such defendants’ motion for summary judgment is granted as to Count II.[12]
*447 III. The breach of contract claim fails since plaintiff failed to establish a breach.
Defendants additionally move for summary judgment as to the breach of contract count. To sustain a claim for breach of contract, a plaintiff must prove: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages.[13] The plaintiff must show a causal connection between the breach and the claimed loss.[14] A party is entitled to recover damages it suffered, provided the damages were such that would naturally and ordinarily result from the breach.[15] SVNE’s claim for breach of contract fails since there is no evidence of a breach.
The basis of SVNE’s breach of contract claim is that the coupon program and billing procedures were illegal and therefore the representations and warranties made by NEPP in the asset purchase agreement regarding “full compliance of all applicable law and regulations” were breached.[16] SVNE terminated the programs and suffered revenue and prescription losses. SVNE attributes the decline in pharmacy revenue to the cessation of the illegal programs. Although the cessation of the programs appears to have caused the decline in pharmacy revenue, there *448 is no evidence that the programs were illegal at the time SVNE ceased offering same or that the programs illegality caused the decline in the pharmacy revenues. Since there is no evidence of illegality, a breach of the asset purchase agreement representation and warranties provision has not occurred. The undisputed facts of record demonstrate that the cause for SVNE’s revenue loss was SVNE’s own business decision to voluntarily terminate the coupon program and change the pharmacies programs without a determination of illegality. Since no determination of illegality exists at this time, there can be no breach of contract and no resultant losses. Based on the foregoing, the claim for breach of contract is dismissed.[17]
CONCLUSION
Based on the forgoing, plaintiff’s partial motion for summary judgment is denied and defendants’ motion for summary judgment is granted. Plaintiff’s complaint is dismissed in its entirety.
ORDER
And now, this 24th day of April, 2015, upon consideration of plaintiff’s partial motion for summary judgment, defendants’ motion for summary judgment, the respective responses in opposition and after oral argument, it hereby is ordered as follows:
1. Plaintiff’s partial motion for summary judgment is denied.
2. Defendants’ motion for summary judgment is granted and plaintiff’s complaint is dismissed in its entirety.

. A disputed question of fact exists as to whether Sandler discussed and disclosed the coupon program and collection of co-pays to Brooker prior to the sale of the pharmacy. Resolution of this dispute is not necessary for purposes of deciding said motions. The court views the facts in the light most favorable to SVNE and therefore assumes for purposes of these motions that defendants failed to disclose the existence of the coupon program and collection of co pay procedures.

. Defendants’ response to plaintiffs motion for summary judgment-Exhibit “L” — asset purchase agreement.

. Defendants’ response to plaintiffs motion for summary judgment-Exhibit “I”- coupon log.

. No opinion regarding the coupon program’s legality exists. The legality of the program is currently under investigation with the office of inspector general. See plaintiff’s reply in further support of motion for summary judgment -Exhibit “4”-Office of inspector general letter dated January 7, 2015.

. Hereinafter referred to as “billing procedures”.

. Plaintiff’s response to defendants’ motion for summary judgment -Exhibit “4”- proposed repurchase letter of intent.

. 106 A.3d48 (Pa. 2014).

. Bruno, 106 A.3d at 68.

. Id.

. Schwartz v. Rockey, 593 Pa. 536, 932 A.2d 885, 894 (Pa. 2007) (citing Fichera v. Gording, 424 Pa. 404, 227 A.2d 642, 643-44 (Pa. 1967)).

. Fichera v. Gording, 424 Pa. 404, 227 A.2d 642, 643-44 (Pa. 1967).

. SVNE appears to rely upon Sandler’s offers to repurchase the pharmacy as evidence of rescission. However, Sandler’s offers to repurchase the pharmacy do not constitute a request for rescission but rather is a request to repurchase, albeit at a discounted price.

. CoreStates Bank, Nat'l Assn. v. Cutillo, 723 A.2d 1053 (Pa. Super. 1999).

. Exton Drive-In, Inc. v. Home Indemnity Co., 436 Pa. 480, 261 A.2d 319 (1969); Logan v. Mirror Printing Co. of Altoona, Pa., 410 Pa. Super. 446, 600 A.2d 225 (1991).

. Ferrer v. Trustees of Univ. of Pa., 573 Pa. 310, 825 A.2d 591 (2002).

. SVNE’s partial motion for summary judgment on the breach of contract claim is not based upon disclosure of the programs but is based on “the fact that the program is unlawful and the representations and warranties in the contract were false.” See SVNE’s partial motion for summary judgment pg. 9 in 9. See also §3.14.

. The question of attorney fees and punitive damages are moot.